**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SHERRY SUTTON-PRICE, *et al.,* | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 4:11-cv-01943-CEJ |
| | ) | |
| DAUGHERTY SYSTEMS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S OPPOSITION TO**
**PLAINTIFFS' MOTION TO CONDITIONALLY CERTIFY FLSA COLLECTIVE ACTION**

Defendant Daugherty Systems, Inc. presents its Opposition to Plaintiffs' Motion to Conditionally Certify FLSA Collective Action.

In opposition to Plaintiffs' Motion, Defendant states as follows:

**I.      INTRODUCTION.**

Plaintiffs' Motion should be denied because it is based wholly on Plaintiffs' unsupported assertion that all of Defendant's consultants are "interchangeable" and are therefore similarly situated.  Plaintiffs' assertion is based entirely on their deliberate mischaracterization of deposition testimony.

Plaintiffs' Motion should also be denied because they unequivocally failed to meet their burden of proving that their purported collection action is made up of a collective group of employees who are similarly situated because Plaintiffs failed to identify the group of employees who perform job duties similar to the named Plaintiffs.

Alternatively, if Plaintiffs' Motion is granted, the putative collective group should be limited to the employees who are in fact similarly situated to Plaintiffs – those employees in

1

Defendant's St. Louis-based Mobile Solutions Group who work or worked in the support

subdivision on the Tier 2 helpdesk or installation groups during the last three years.

## II.    LEGAL STANDARD.

Because the parties have already engaged in substantial, class-based discovery, Plaintiffs

are subjected to a heightened burden of proof.  *Kayser v. Southwestern Bell Tele. Co.*, 2012 U.S.

Dist. LEXIS 177990, *20-21 (E.D. Mo. Dec. 17, 2012) (a true and accurate copy of this

unpublished opinion is attached as ***Exhibit J***).  In *Kayser*, Chief Judge Catherine D. Perry

adopted and described the heightened standard as follows:

> [I]n order to provide some measurable standard by which to judge if Plaintiffs
> have made a sufficient modest "plus" factual showing . . . <u>this Court will compare
> Plaintiffs' allegations set forth in their Complaint with the factual record
> assembled through discovery to determine whether Plaintiffs have made sufficient
> showing beyond their original allegations</u> that would tend to make it more likely
> that a class of similarly situated employees exists.

*Id* at *21 (*citing McClean,* 2011 U.S. Dist. LEXIS 142283, 2011 WL 6153091, at *5) (emphasis

added) (Exhibit J).

In this case, the heightened standard applies because the parties have already engaged in

an initial phase of discovery concerning the "class" issues in this case.  *See* Class Action and

Certification Case Mgmt. Ord. [doc#34] dated July 16, 2012; s*ee also, Kayser*, 2012 U.S. Dist.

LEXIS 177990, *21 (attached hereto as Exhibit J).[1]

---

[1] As part of the initial phase of discovery, the parties exchanged interrogatory and document request responses,
Defendant produced over 16,000 pages of documents, and Plaintiffs deposed Defendant's corporate representatives.
Therefore, applying the heightened standard in this case is justified.  *See, e.g., McClean v. Health Sys., Inc.*, 2011
U.S. Dist. LEXIS 142283, *11-12 (W.D. Mo. Dec. 12, 2011) (applying heightened standard where parties agreed to
an initial phase of discovery as to the "similarly situated" analysis, exchanged interrogatories and document
requests, and took depositions) (a true and accurate copy is attached as ***Exhibit K***); *Creely v. HCR ManorCare, Inc.*,
789 F. Supp.2d 819, 826 (N.D. Oh. 2011) (applying heightened standard following initial phase of discovery as to
the certification issue).

### III.   PLAINTIFFS' MOTION SHOULD BE DENIED BECAUSE IT IS BASED ON THEIR FALSE ASSERTION THAT DEFENDANT'S EMPLOYEES ARE ALL INTERCHANGEABLE.

Plaintiffs' Motion should be denied because it is based on the false assertion that employees move between job roles regularly and that any employee can serve in any job role. Specifically, Plaintiffs' Memorandum states: "Each Consultant plays a particular role on each particular project, and Consultants can play any one of the roles on any given day." Plaintiffs' Memorandum at 3 (citing Garofalo depo. at 46:12-24) (emphasis added).

In their attempt to justify their assertion, Plaintiffs mis-cited the record. That portion of the Michael Garofalo deposition read:

> Q.  Right.  And I understand that and I guess I'm not really interested in the description there.  I'm more interested in -- I would see individuals who going through their payroll at the beginning of -- and I don't remember what the time frame would be -- who when they started as a business analyst I would be labeled as an associate consultant, and then they would eventually get to business analyst II but that title didn't change?
>
> A.  Well, a business -- if we're looking at the left hand which is client delivery roles which is a title structure -- and I use the word title structure, but it really is a role.  It's what they're performing as at the client site.  So what role are they actually doing on a project at a client site?  The middle column is our Daugherty titles.  You may be performing as a business analyst II, but you're still in the category of an associate consultant because of your length of service, maybe your performance.  It could be some of your skill sets still.  But we sold you as a business analyst II at a client site because maybe you're working towards progression to that role.  That's not a title, it's a role of performing on a project. Again, I use my analogy from my accounting background.  I could run an audit and I may be considered a senior accountant to run an audit, but I still may be an associate accountant because it's a level my title is within the organization.  I'm not up for promotion yet and I'm working towards that role or working towards that next title or promotion, but the role I'm performing may be at a higher level.

Garofalo depo. at 45:24-47:7 (attached to Plaintiffs' Memorandum as *Exhibit 1*).  In no way, shape, or form does this testimony support the proposition that "consultants can play any one of the roles on any given day" as Plaintiffs assert in their Motion.  Clearly, Mr. Garofalo was only

explaining the difference between an employees' job title (associate consultant, consultant, etc.)
and the employee's role (product specialist, business analyst, etc.).  He did not testify that
Defendant's employees are "interchangeable."

Based on their mischaracterization of this deposition testimony, Plaintiffs created an
entirely new and fictitious job classification (which they call "IT Customer Consultant")[2] as a
straw man, rather than addressing the defined and documented individual roles within
Defendant's organization.  Defendants do not employ a classification of worker called "IT
Customer Consultant."

In fact, Plaintiffs' Amended Complaint recognize that there are actually several separate
categories of workers at issue:

1. Product Specialists,

2. Quality Analysts,

3. Business Analysts,

4. Data Analysts,

5. Software Engineers,

6. Technical Analysts,

7. Implementation Specialists,

8. Implementers,

9. Application Architects,

---

[2] Plaintiffs also defined the job duties of their newly created and fictional "IT customer consultant" position as
providing "consulting and support services, including basic IT troubleshooting, configuration, and general
consulting duties."  Plaintiffs' Memorandum at 4.  There is not a shred of evidence in support of this assertion.  In
fact, there are no employees at Defendant that provide "basic IT troubleshooting."  Richards depo. at 90:22-25
(attached to Plaintiffs' Memorandum as *Exhibit 2*).  The most "basic" troubleshooting performed by Defendant is
resolving problems that already stumped the client's IT department.  Richards depo. at 28:17-29:23.  Plaintiffs' only
citations to record evidence are to inadmissible portions of their declarations claiming unspecified "other
consultants" performed similar work as the named Plaintiffs.  Sutton-Price Decl. [doc#55-5] at ¶ 3; Stahl Decl.
[doc#55-6] at ¶ 3.

10. Specialists,

11. Data Architects,

12. Consultants, and

13. other employees and team leads who performed IT related work for Defendant.

Plaintiffs' First Amended Complaint [doc#11] at ¶ 13.  However, rather than addressing the job duties of each of the defined categories of workers and analyzing whether they are similar to Plaintiffs' job duties, Plaintiffs instead chose to set up a straw man by creating a fictitious single category of worker ("IT Customer Consultant"), misquoting deposition testimony in an attempt to justify their actions, then basing their entire Motion on analyzing a job classification that does not actually exist.  Their creation and use of a straw man[3] should be rejected and their Motion to Certify denied.

## IV.   PLAINTIFFS FAILED TO MEET THEIR BURDEN OF ESTABLISHING THE EXISTENCE OF A GROUP OF EMPLOYEES WHO ARE SIMILARLY SITUATED TO THE NAMED PLAINTIFFS.

Collective action certification is inappropriate unless Plaintiffs have shown that they were similarly situated to other putative collective action members because they were the victims of a single decision, policy, or plan that violated the FLSA.  *Kayser*, 2012 U.S. Dist. LEXIS 177990, *19.  This case is an alleged "misclassification" case.  First Amended Complaint at ¶ 15.   In a misclassification case (such as this one), the appropriate collective group is limited to other putative collective action members who perform similar job duties to the named Plaintiffs.  *See,*

---

[3] As an example of their duplicity, Plaintiffs allege that they are similarly situated to employees performing the role of "Application Architects."  Plaintiffs' Memorandum at 2 ("Consultants work in various roles, such as: . . . Application Architects.").  This is simply and demonstrably untrue.  Both named Plaintiffs worked to support a single software program used by only one of Defendant's clients.  Plaintiff Sutton-Price is classified as Product Specialist II and currently earns approximately $63,000 per year.  Richards Aff. at ¶¶ 11-13.  Plaintiff Stahl was classified as an Implementation Specialist and was earning around $75,000 per year when her employment ended. Richards Aff. at ¶ 10.  On the other hand, Application Architects are highly skilled computer professions who provide technical direction as to the structure, flow of control and strategy for positioning logic between software modules, and are responsible for software analysis, design and construction testing and integration.  Richards Aff. at ¶ 27.  All Application Architects are paid more than $100,000 per year.  Richards Aff. at ¶ 28.

*e.g., Romero v. H.B. Auto. Grp., Inc.*, 2012 U.S. Dist. LEXIS 61151, *23 (S.D.N.Y. May 1, 2012) (a true and accurate copy is attached as ***Exhibit L***).

> The fact that the putative opt-ins may have been misclassified under at least two different exemptions, premised on their different job duties, also militates against conditionally certifying the collective action as proposed. Where plaintiffs assert that they were misclassified as exempt, the focus is on the nature of the employees' job duties in the context of the relevant exemption criteria. ***A collective action is only appropriate where the plaintiffs make some showing that the nature of the work performed by other claimants is at least similar to their own.*** It follows that, where a proposed collective action contains employees with varied job duties, who were allegedly misclassified as exempt under different FLSA exemptions (e.g., the administrative exemption and the automotive salesperson exemption), it fails to allege a discriminatory scheme common to all members of the putative class.

*Romero*, 2012 U.S. Dist. LEXIS 61151, *36-37 (internal citations omitted) (emphasis added); s*ee also, Nerland v. Caribou Coffee Co.*, 654 F. Supp.2d 1010, 1018 (D. Minn. 2007) (while the named plaintiffs need not have identical job duties as the putative collective action members, the named plaintiffs bear the burden to show the positions to be included are "similar" to their own.). The requirement that other putative collective action members must perform similar job duties as the named plaintiffs is well-illustrated by a case both litigated by Plaintiffs' counsel and cited in Plaintiffs' Memorandum.

In *Kennedy v. Boulevard Bank*, Plaintiffs' counsel in this case originally sought to certify a class of "loan officers."  2012 U.S. Dist. LEXIS 118491, *2, n.1 (E.D. Mo. Aug. 22, 2012) (attached to Plaintiffs' Memorandum as ***Exhibit 14***).  However, in the plaintiff's Reply brief, counsel backtracked and limited the plaintiff's certification request to employees performing similar functions as a "Real Estate Mortgage Loan Officer,"  based on the plaintiff's assertion that employees in that position were misclassified (as overtime exempt) and they "performed similar work" as the plaintiff.  *Id.* at *7-8.  Defendants suspect that Plaintiffs intend a similar ploy in this case and if they follow suit (as an attempt to convince the Court to "split the baby"

and give them a lesser collective group than initially requested), Defendant believes that

sanctions would be appropriate.

### A.    Plaintiffs' Allegations About Their Job Duties.

Plaintiffs' pleadings and discovery responses claim they perform the following job

duties:

| Plaintiff | Job Role | Job Duties | Citation |
|---|---|---|---|
| Both Named Plaintiffs Combined | N/A | ➢ The upkeep of computers and phone systems;<br>➢ Call center support;<br>➢ Correcting hardware and software problems;<br>➢ Troubleshooting network connectivity issues;<br>➢ Installing, configuring, testing, and troubleshooting computer applications, networks and hardware;<br>➢ Involvement in developing and implementing computer systems, routers, and switches;<br>➢ Travel to customer locations to set up and establish networking and systems and train others in the use of the systems. | First Am. Compl. [doc#11] at ¶ 14 |
| Sherry Sutton-Price | Senior Technical Analysts; then Product Specialist II in April 2011 | ➢ Preparing documentation outlining product functionality and product specialists' processes and procedures<br>➢ Making suggestions for resolutions of business issues for existing and potential product users;<br>➢ Making suggestions for product improvements<br>➢ Providing call center support to correct hardware and software problems;<br>➢ Troubleshooting network connectivity issues;<br>➢ Installing, configuring, testing, and troubleshooting computer applications, networks, and | First Am. Compl. [doc#11] at ¶¶ 9, 19; Plaintiff Sutton-Price's Interrogatory Responses at 9 (a true and accurate copy is attached as **Exhibit D**). |

| | | | |
|---|---|---|---|
| | | hardware. | |
| Jeanna Stahl | Implementation Specialist | ➢ Telephone support for clients;<br>➢ Training wholesalers for the implementation of the Mobility application provided by Defendant;<br>➢ Setting up the training schedule for an assigned wholesaler, and going on-site to train the wholesaler;<br>➢ Installing, configuring, testing, and troubleshooting computer applications, networks, and hardware. | First Am. Compl. at ¶ 10; Plaintiff Stahl's Interrogatory Responses at 9-10 (a true and accurate copy is attached as ***Exhibit G***). |

### B.      Plaintiffs Failed to Make Any Showing Whatsoever That There is a Group of Employees Who Perform Similar Job Duties.

Plaintiffs did not even attempt to identify a group of employees who perform similar duties to Plaintiffs (other than naming a handful of employees whom they assert performed similar job duties).  S*ee* Plaintiffs' Memorandum at 5 (naming specific employees)[4], 15 ("all IT consultants perform non-exempt IT customer consulting duties within a loosely-defined structure of overlapping job roles").  Instead, Plaintiffs urge this Court to certify a collective group consisting of the fictional classification of "IT customer consultants" in which they would place all of Defendant's IT employees based solely on their mischaracterization of deposition testimony.

A collective group consisting of Defendant's "IT customer consultants" would be without members because there are no such things.  None of Defendant's employees are "IT customer consultants," and its employees are not interchangeable.  Affidavit of Michael C. Garofalo ("Garofalo Aff.") at ¶¶ 11-17 (a true and accurate copy is attached as ***Exhibit A***).  In fact, even within the Mobile Solutions Group, employees typically do not cross from the development

---

[4] Plaintiff Sutton-Price specifically identified Product Specialists J. Matt Nowotny and Adam Harman, Business Analyst III Mary Stadter, and Data Analyst Ashley Tritschtler; Plaintiff Stahl identified Product Specialists Josie Oberfeld and Karen Yancik, and Business Analyst Carolyn Jenkins as performing similar job duties.

subdivision to the support subdivision (in which the named Plaintiffs work).  Richards depo. at 82:25-83:23.

Plaintiffs have attempted to persuade this Court to conditionally certify a collective group consisting of sixteen different types of workers at Defendant's five locations instead of identifying a concrete group of employees who performed similar job duties and are similarly situated to the named Plaintiffs.  In doing so, Plaintiffs gambled that this Court would do their job for them by analyzing Plaintiffs' pleadings and granting Plaintiffs a narrower collective certification.  Given Plaintiffs' counsel's experience in the *Kennedy v. Boulevard Bank* case, Plaintiffs' counsel was clearly aware that in a misclassification case, only those employees who perform similar duties to the named Plaintiffs can be joined as being "similarly situated."  *See, supra*.  This Court should not step in and remedy Plaintiffs' failure to actually identify a putative collective group of employees who performed similar job duties.  Plaintiffs failed to meet their burden of proof and their Motion should be denied.  To do otherwise would encourage Plaintiffs to continue to overreach and count on the Court to bail them out when the facts do not support their pleadings; exactly the type of conduct that makes collective actions expensive for the parties and burdensome for the courts.

**V.    If This Court Grants Conditional Certification, the Putative Collective Group Should Be Significantly Narrowed.**

Even if Plaintiffs met their burden at conditional certification (which they did not), the putative collective group should be limited to those employees in Defendant's Support subdivision of its Mobile Solutions Group based in St. Louis who perform/performed work as part of the Tier 2 helpdesk or Installation team.

A.    **The Putative Collective Group Should be Limited to the Mobile Solutions Group Because Only Employees in the Mobile Solutions Group Could be Similarly Situated to Plaintiffs.**

Defendant primarily provides software design and analysis consulting services in the information technology industry and provides staff augmentation and support work for the IT departments of Fortune 500 companies on a project-by-project basis. Garofalo depo. at 12:15-13:1.[5] Defendant's primary business does not provide ongoing support after a project is completed: Defendant only does so if it is contracted to take the project in a different or further direction. Garofalo Aff. at ¶ 10.

Defendant's organizational chart shows the structure of Defendant's various groups. John Wirth is the Regional Manager of each of Defendant's out-of-state locations[6], each of which has a branch manager. Garofalo Aff. at ¶ 7, Exhibit B1. Jeff Hatfield oversees Defendant's St. Louis-based consultant group. Garofalo Aff. at ¶ 7, Exhibit B1. The Mobile Solutions Group has a different structure.

1.    **The Mobile Solutions Group is discreet and unique.**

Defendant has a separate division known as the Mobile Solutions Group, which is located

---

[5] Defendant primarily assists its clients by offering:

1.    Management consulting services to help clients ensure their technology system is aligned with the clients' business goals;

2.    Mobile consulting to help clients ensure they have the best mobile technology solution to meet their business needs;

3.    Business intelligence to help clients make better strategic use of their business data;

4.    Custom development of software solutions to meet clients' business needs; and

5.    Managed services which provide staff augmentation to clients.

Garofalo Aff. at ¶ 4.

[6] Defendant's corporate headquarters is located in St. Louis, Missouri, which has a corporate office, a group of St. Louis-based consultants and Defendant's Mobile Solutions Group. Garofalo depo. at 14:2-4, 25:8-16. Defendant has employees in each of its out-of-state locations: Atlanta, Georgia; Chicago, Illinois; Minneapolis, Minnesota; and Dallas, Texas. Garofalo depo. at 13:12-21. None of these locations has a Mobile Solutions Group. Garofalo Aff. at ¶¶ 6-8, 10.

in its St. Louis office and is overseen by Bill Richards.  Garofalo depo. at 12:19-21, 25:8-16; Exhibit B1.  Unlike the rest of Defendant's operations, the Mobile Solutions Group works for a single client (Anheuser-Busch InBev) on a single product (a software program called Mobility). Garofalo depo. at 12:19-21, 51:2-15; Garofalo Aff. at ¶ 8.  The Mobile Solutions Group has two subdivisions: support (or outsourcing) and development.  Affidavit of William E. Richards ("Richards Aff.") at ¶ 6 (a true and accurate copy is attached hereto as ***Exhibit B***).  The development subdivision performs functions similar to Defendant's software consulting business in that it is constantly working to improve the Mobility software so that it functions better. Garofalo depo. at 51:2-15; Richards Aff. at ¶ 16.  The support (or outsourcing) subdivision of the Mobile Solutions Group performs a unique role within Defendant's business structure by providing support services for the Anheuser-Busch InBev wholesalers using the Mobility software.  Richards Aff. at ¶ 8.  The named Plaintiffs work or worked in the support subdivision of the Mobile Solutions Group.  Richards Aff. at ¶ 4.

The differences between the Mobile Solutions Group and the rest of Defendant's business are illustrated by Defendant's separate flow charts for the two different business segments. Exhibit C entitled Daugherty's Title and Roles shows how the majority of Defendant's employees are organized – there is a separate chart showing how its Mobile Solutions Group employees are organized.  Garofalo depo. at 35:15-36:4, 36:24-39:23; Exhibit C; Richards Aff. at ¶ 17; Exhibit E.  The separate flow chart for Defendant's Mobile Solutions Group includes the Support subdivision (labeled as "Outsourcing") made up of Product Specialists and Quality Analysts, which are unique to the Mobile Solutions Group.  Richards depo. at 12:22-13:3; Garofalo depo. at 49:13-23, Ex. E; Richards Aff. at ¶ 17.  Both Plaintiffs worked or work in this "Outsourcing" subdivision of the Mobile Solutions Group.  Richards Aff. at ¶ 7-8.

Given the differences between the work performed by the employees in Defendant's primary business group and the work performed by employees in Defendant's unique Mobile Solutions Group, any putative collective group should be limited to only those employees in the Mobile Solutions Group in which both named Plaintiffs work or worked.

2.      <strong>The Development Subdivision of the Mobile Solutions Group Performs Substantially Different Work Than Defendant's Support Subdivision.</strong>

The development subdivision of the Mobile Solutions Group should be excluded from the putative collective group because it performs work that is substantially different from the support subdivision in which the named Plaintiffs work or worked.  The Development subdivision of the Mobile Solutions Group is supervised by Julie Moore (whereas the Support subdivision is supervised by Jamie Fallert) and performs development work, such as making changes and improvements to the Mobility software package; rather than providing support to the users of the Mobility software package, which is what Plaintiffs did as part of the Support subdivision. Richards depo. at 31:8-16; Richards Aff. at ¶¶ 7-8, 15-16.  Therefore, the employees in the development subdivision should be excluded from the putative collective group because they perform different job duties than Plaintiffs.  *See, e.g., Romero*, 2012 U.S. Dist. LEXIS 61151 at *23.

3.      <strong>Only Employees Who Work or Worked in the Support Subdivision of the Mobile Solutions Group on the Tier 2 Helpdesk or the Installation Team Could Be Similarly Situated to Plaintiffs.</strong>

The named Plaintiffs both work or worked in the Support subdivision of the Mobile Solutions Group.  Richards Aff. at ¶ 9.  The Support subdivision of the Mobile Solutions Group supports only a single client (Anheuser-Busch InBev wholesalers) for a single product, the installation and use of the Mobility software package.  Richards Aff. at ¶ 4.  The employees in

12

Defendant's Support subdivision of the Mobile Solutions Group perform unique job duties which are different in scope and character from the duties performed by employees in the remainder of Defendant's organization.  Richards Aff. at ¶ 8.

The Support division includes groups of employees in subdivisions named: (a) Tier 2 Helpdesk; (b) Systems Tier 3 Support; (c) Data Analysts; (d) Installation; (e) Business Admin; (f) Ecommerce; and (g) Training.  Richards Aff. at ¶ 20, Exhibit F.  Plaintiff Sutton-Price works in the Tier 2 Helpdesk and Plaintiff Stahl formerly worked in the equivalent of Installation. Richards Aff. at ¶¶ 23, 25.  Only those employees who have worked in either of these two subdivisions are potentially similarly situated as Plaintiffs.

Tier 2 Helpdesk employees take calls that are transferred to them from a Tier 1 helpdesk staffed by Anheuser-Busch InBev's own employees.  Richards depo. at 28:17-23.  When Anheuser-Busch InBev's Tier 1 helpdesk employees are unable to resolve an issue, they escalate the call to the Tier 2 helpdesk of Defendant.  Richards depo. at 28:17-23, 90:4-91:6.  Defendant's Tier 2 support staff then analyzes the problem, diagnoses it, fixes it, and prevents it from arising in the future where possible.  Richards Aff. at ¶¶ 21-22.  This is the type of work Sutton-Price performs.  Declaration of Sherry Sutton-Price [doc#55-5] at ¶ 3; Richards Aff. at ¶ 23.

The Installation subdivision of the Mobile Solutions Group physically travels to Anheuser-Busch InBev distributors to install both the Mobility software package and the related hardware -- and to train the distributors' employees on using the software and hardware. Richards Aff. at ¶ 24; Richards depo. at 28:25-29:3.  This is the type of work Plaintiff Stahl performed.  Declaration of Jeanna Stahl [doc#55-6] at ¶ 3; Richards Aff. at ¶ 25.

The remaining parts of Defendant's Support subdivision of its Mobile Solutions Group performs work that is very different from the work performed by the Tier 2 Helpdesk and

Installation team and are properly excluded from the putative collective group.  For example, the Systems Tier 3 Support group resolves problems in the Mobility package that are the result of a software bug and deals with other complex issues that generally require computer coding which alters the Mobility software itself.  Richards depo. at 79:14-21.  Similarly, the Data Analyst group helps wholesalers with their data needs (such as when two wholesalers merge and need to bring the data in their two different systems together to form one data set), which duties do not overlap with either the Tier 2 Helpdesk or Installation.  Richards depo. at 83:7-12.  The Business Admin group collects information for billing and handles invoicing issues related to the Mobile Solutions Group; and the Ecommerce group handles issues relating to electronic financial transactions and payments.  Richards depo. at 30:13-16, 97:8-13.  The Training group creates training manuals for use in training others on the Mobility software package.  Richards depo. at 30:17-23.  Therefore, because these groups of the Mobile Solutions Group all perform significantly different functions from the functions performed by Plaintiffs, they should be excluded from the putative collective group.

Plaintiffs are only potentially similarly situated to the following group: all of Defendant's employees who have worked in the Mobile Solutions Group and who performed work on the Tier 2 helpdesk or performed customer installations of the Mobility software package in the three years preceding this Court's ruling on Plaintiffs' Motion for Conditional Certification.

### B.     Defendant's Out-of-State Locations Must be Excluded.

Plaintiffs worked or work only in Defendant's Mobile Solutions Group, which performs services for a single client and which is limited to Defendant's St. Louis office.  Richards Aff. at ¶¶ 4-5, 26; Garofalo depo. at 25:8-16, 26:1-12.  Plaintiffs never worked in Defendant's other offices in Atlanta, Minneapolis, Dallas, or Chicago.  Richards Aff. at ¶ 26.  Furthermore,

Plaintiffs have not offered even a scintilla of evidence detailing the job duties of the employees

in Defendant's Atlanta, Minneapolis, Dallas, or Chicago offices.  Neither did Plaintiffs make any

factual assertions in their declarations about Defendant's Atlanta, Minneapolis, Dallas, or

Chicago offices (Plaintiffs' Memorandum at Exs. 5-6) and Plaintiffs limited their examination of

Defendant's corporate representative to the Mobile Solutions Group and Defendant's other St.

Louis employees.  Garofalo depo. at 8:6-10:6.  Therefore, to the extent Plaintiffs seek to include

any employees in Defendant's Atlanta, Minneapolis, Dallas, or Chicago offices, they

unequivocally failed to meet their burden of establishing employees in those offices performed

similar job duties and were, on that basis, similarly situated to them.  *Kayser*, 2012 U.S. Dist.

LEXIS 177990, *18 (recognizing plaintiffs bear the burden of proving other employees are

potentially similarly situated to them); *Simmons v. Valspar Corp.*, 2011 U.S. Dist. LEXIS 39340

(D. Minn. Apr 11, 2011) ("The only clear requirement is that 'averments in support of a Motion

for Conditional Certification must be based on personal knowledge.'") (internal citation omitted)

(a true and accurate copy is attached as ***Exhibit M***).

## VI.    NOTICE.

Notice to the putative collective group must be "timely and accurate" by giving potential

plaintiffs the ability to make informed decisions about whether to participate.  *See, e.g.,*

*Littlefield v. Dealer Warranty Servs., L.L.C.*, 679 F. Supp.2d 1014, 1018 (E.D. Mo. 2010).  A

court's role is to ensure the plaintiff's proposed notice is timely, accurate, and informative by

approving the content and method of the notice, while also avoiding the appearance that it

endorses the merits of the underlying claim.  *Id.*  Thus, a defendant's reasonable objections to the

plaintiff's proposed notice must be considered.  *See, e.g., King v. ITT Continental Baking Co.*,

1986 U.S. Dist. LEXIS 29321, *6 (N.D. Ill. Feb. 13, 1986) (a true and accurate copy is attached as **Exhibit N**).

In this case, Defendant objects to Plaintiffs' proposed notice and has attached a redlined version of its proposed changes as **Exhibit H**.  Defendant has also attached a clean version of its Proposed Notice as **Exhibit I**.

**A.    The Contents of Plaintiffs' Proposed Notice Should Be Amended in the Following Ways.**

**1.    The Case Caption Should Be Replaced With the Plaintiffs' Counsel's Letterhead.**

Using the case caption at the top of the notice improperly gives the appearance that the notice is endorsed by the Court.  *See, e.g., King*, 1986 U.S. Dist. LEXIS 29321 at *6 ("use of the case caption and inclusion of a statement that the Court has approved the notice would create the very impression of judicial imprimatur that the *Woods* court cautioned against.).  Instead, Plaintiffs' counsel's letterhead should be used because it is a notice from plaintiffs' counsel. Similarly, the notice should contain a "From:" line at the beginning to make it clear that it is Plaintiffs who are sending the notice and not the Court.

**2.    Plaintiffs' Notice Should Not Indicate It Has Been Authorized by the Court.**

Plaintiffs' Notice states "This notice and its contents have been authorized by the U.S. District Court, Eastern District of Missouri, Honorable Judge Carol E. Jackson."  This sentence should be removed because it gives the appearance the Court endorses the notice.  *See, e.g., King*, 1986 U.S. Dist. LEXIS 29321 at *6.

### 3.      Defendant's Primarily Defense Should be Stated.

Defendant's primary defense should be included to give putative collective group members sufficient notice of Defendant's primary defense to be able to properly evaluate their potential claim against Defendant. *See, e.g., King*, 1986 U.S. Dist. LEXIS 29321 at *8.

### 4.      Plaintiffs' Notice Should Indicate Only Those Employees Who Take Affirmative Action Will Have Their Rights Impacted.

Putative collective group members who do not file consents to opt into this lawsuit will not have their rights impacted. *Kayser*, 2012 U.S. Dist. LEXIS 177990 at *18-19, n.2. Therefore, in the "Whom Does This Lawsuit Impact" section of the notice, it should be noted that only employees who affirmatively opt in will be impacted.

### 5.      The Notice Period Should be Sixty Days Instead of Ninety Days.

Courts have wide latitude in determining the proper deadline for the return and filing of signed opt in forms. *Campbell v. Adv. Sales & Marketing, L.L.C.*, 2010 U.S. Dist. LEXIS 115065, *11-12 (S.D. Ind. Oct. 28, 2010) (a true and accurate copy is attached as ***Exhibit O***). Defendants believe a sixty-day time period would be more appropriate in this case than a ninety-day time period because there are no particular barriers to identifying and notifying collective group members because they all work or worked in the St. Louis area relatively recently. Furthermore, the potential plaintiffs are well-paid and well-educated individuals and are, therefore, better equipped to make a swifter decision as to whether to join the lawsuit.

### 6.      The Notice Should Indicate Plaintiffs May Represent Themselves or Obtain Their Own Counsel.

Potential plaintiffs have a right to choose their own counsel or to represent themselves. *King*, 1986 U.S. Dist. LEXIS 29321 at *17-18.  Plaintiffs' notice should be revised to reflect this option in the "How and When to Join the Lawsuit" and "Your Legal Representation If You Join"

sections.  Also, in the first section, the return address should be addressed to Plaintiffs' counsel rather than to "Daugherty Systems, Inc. Wage and Hour Litigation" which gives the appearance a third party administrator has been appointed.

> **7.     Plaintiffs' Notice Should Add the "Effect of Joining This Action" and "Effect of Not Joining This Action" Sections That Are Contained in the Model Notice Used by Plaintiffs.**

Plaintiffs "modeled closely" their notice with the notice approved in *Huang v. Gateway Hotel Holdings*, 248 F.R.D. 225 (E.D. Mo. 2007).  However, they excluded two sections designed to inform potential plaintiffs about the legal consequences of joining the action or not joining the action.  Those sections are necessary to fully inform potential plaintiffs of the legal consequences of their decision and should be added to Plaintiffs' notice.

> **8.     The Statute of Limitations Section Should Be Revised to More Accurately Reflect the Law.**

Plaintiffs' description of their claim should reflect they are claiming overtime "compensation" was not paid and that it is due only for employees performing non-exempt work.

> **B.     The Method of Plaintiffs' Proposed Notice Should Be Amended in the Following Ways.**

Plaintiffs seek to distribute notice vial email, regular U.S. mail, and through posting notice at Defendant's locations.  Defendant objects to posting notice at its locations because there are no inherent barriers to distributing notice through mail and email.  In the cases cited by Plaintiffs, there were barriers to mailing notice to potential plaintiffs.  In *Arriaga-Zacarias v. Lewis Taylor Farms, Inc.*, the putative collective group of employees were Mexican citizens working on an American farm with work visas.  2008 U.S. Dist. LEXIS 98064, *1-2 (M.D. Ga. Dec. 4, 2008) (a true and accurate copy is attached as ***Exhibit P***).  The putative plaintiffs resided in employer-provided trailers and barracks while they were in the country working.  *Id.* at *24.

In *Garcia v. The Salamanca Grp., Ltd.*, restaurant workers who worked at four separate restaurants were involved.  2008 U.S. Dist. LEXIS 22852, *3-5 (N.D. Ill. Mar. 24, 2008) (a true and accurate copy is attached as ***Exhibit Q***).  In this case, a well-educated and centralized collective group is involved who will not need notice beyond U.S. Mail and email.  Furthermore, Plaintiffs did not provide a proposed workplace posting for the Court's consideration, so their request for a workplace posting should be denied.  *Kennedy*, 2012 U.S. Dist. LEXIS 118491 at *10, n.6.

Defendant also objects to providing work email addresses to Plaintiffs' counsel for the purpose of providing electronic notice.  Defendant attempts to limit use of it work email addresses to business purposes and objects to using it for the purposes of facilitating Plaintiffs' notification of a lawsuit against Defendant.  Defendant is willing to provide the personal email addresses in its possession for each putative collective group member.

## VII.   CONCLUSION.

Plaintiffs' Motion to conditionally certify an FLSA collective action should be denied. Plaintiffs' Motion is based primarily on deposition testimony that Plaintiffs have deliberately mis-cited, and rather than address the actual categories of workers at issue, Plaintiffs instead elected to create their own, fictitious category of worker and requests that the Court certify a collection action based on their fiction.  Plaintiffs have utterly failed to carry their burden of demonstrating the existence of a group of employees who are similarly situated to Plaintiffs and their Motion should be denied.

Even if Plaintiffs' Motion were limited to correct citations to the record and the applicable law, any collective group should be limited to those employees employed in Defendant's Mobile Solutions Group's Tier 2 Help Desk and Installation Groups for the three

years preceding this Court's ruling.  However, Defendant urges that this Court refrain from

rewarding Plaintiffs for filing false and overreaching pleadings in an attempt to overstate the

potential collection group at issue.  Collective action lawsuits are becoming an increasing

financial burden on society and a logistical challenge for the Courts, and Defendant believes that

certifying a class in spite of Plaintiffs' abject failure to meet their burden would only condone

such behavior and encourage its continuation in the future.

     Plaintiffs' Motion should be denied in its entirety.

        Respectfully submitted,

        **HESSE MARTONE, P.C.**

By:   /s/ Matthew B. Robinson
      Andrew J. Martone, E.D. No. 37382
      Matthew B. Robinson, E.D. No. 498731
      1650 Des Peres Road
      Suite 200
      St. Louis, MO  63131
      (314) 862-0300
      (314) 862-7010 – fax
      andymartone@hessemartone.com
      mattrobinson@hessemartone.com

Dated: February 1, 2013.

      *Attorneys for Defendant*
      *Daugherty Systems, Inc.*

<u>**CERTIFICATE OF SERVICE**</u>

  The undersigned hereby certifies that a true and accurate copy of the foregoing document was served via the Court's CM/ECF system this 1st day of February 2013, to:

  Kevin J. Dolley
  Mark A. Koupal, Jr.
  Sarah Jane Hunt
  Law Offices of Kevin J. Dolley, LLC
  34 North Brentwood Blvd.
  Suite 207
  St. Louis, MO  63105
  kevin@dolleylaw.com
  mark@koupaljrlaw.com
  sarah.jane.hunt@dolleylaw.com

            /s/ Matthew B. Robinson_____

21