UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SHERRY SUTTON-PRICE and JEANNA STAHL, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>DAUGHERTY SYSTEMS, INC.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Case No. 4:11-CV-1943 (CEJ)<br>)<br>)<br>)<br>) |

## MEMORANDUM AND ORDER

This matter is before the Court on plaintiffs' motion to conditionally certify a collective action under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 216(b). Defendant has filed a response in opposition and the issues are fully briefed. Also pending are defendant's motion for summary judgment, plaintiffs' motion to dismiss or stay the summary judgment motion, and defendant's motion for oral argument on class certification.

I. **Background**

Plaintiffs Sherry Sutton-Price and Jeanna Stahl are, respectively, current and former employees of defendant Daugherty Systems, Inc. (Daugherty). They allege on behalf of themselves and others similarly situated that Daugherty violates the FLSA by incorrectly classifying them as exempt, thereby avoiding paying them overtime. Plaintiffs seek conditional certification of a class consisting of all employees in the Daugherty organization who hold the job title of "Consultant" and who work in the

following "roles":[1] Product Specialists, Implementation Specialists, Business Analysts, Quality Analysts, Data Analysts, Information Analysts, Business Intelligence Specialists, Data Architects, Software Engineers, Business Architects, Information Architects, Application Architects, Technical Architects, Senior Information Architects, Senior Business Architects, and Project Managers.

Plaintiffs assert that the employees who work in these roles provide "IT consulting and support services, including basic IT troubleshooting, configuration, and general consulting duties." These employees do not have the ability to hire, fire, discipline, or promote employees. Plaintiffs allege that they and the putative class members are misclassified as exempt and are entitled to compensation at the rate of 1.5 times their regular hourly wage for hours worked in excess of 40 per workweek. Defendant asserts that all potential class members fall within the "computer employee" exemption to the FLSA's overtime requirements. See 29 U.S.C. § 217(a)(17).

Defendant Daugherty has consulting divisions in four cities, including St. Louis, Missouri. The divisions provide software consulting and support services to Fortune 500 and Fortune 100 companies. The consulting services consist of: (1) management services to ensure that clients' technology systems align with their business goals; (2) mobile technology consulting; (3) business intelligence to help clients make better strategic use of their business data; and (4) custom development of software to meet business needs. Affidavit of Michael C. Garofalo ¶ 4 [Doc. 64-2]. In addition, Daugherty supplies personnel on a temporary basis to help clients fill gaps in their in-house technology departments. Garofalo Deposition at 91 [Doc. #55-1].

---

[1]According to a December 2008 organizational chart, Daugherty distinguishes between "titles" and "delivery roles." There are four titles (Principal Consultant, Senior Consultant, Consultant, and Associate Consultant) and twenty-four roles.

Employees in the consulting units work on teams assembled for the purposes of a specific project. Depending on the complexity and scope of a project, a team may have business analysts, business architects, information analysts, software engineers, and a project manager. See id. at 33 (consultants assigned based on project needs); 80-81 (describing role of business analysts); 82 (business analysts work with software engineers and information specialists); 106 (example of team needed to create an accounts receivable report); 133-35 (role of project managers); 164-69 (role of business architects). Business analysts work with a client's employees to understand the client's requirements for the new project. Garofalo Dep. at 74-75. Although they typically do not write software, they must have technical skills in order to communicate the client's needs to the technical specialists. Id. at 82-83. Information analysts work with the client's data, learning how it is stored and deciding how to access it for the new project. Id. at 143-47. They are responsible for formatting the data output. Id. at 154. Software engineers use the requirements generated by the business analysts to write software code. See id. at 160 (analogy to building a house: business analysts generate the blueprints; software engineers are the carpenters that build the house). The business and technical architects engage in higher-level problem solving. Id. at 164-67. The project managers are the "team leads" with responsibility for general problem solving, overall management of the project, keeping to the project's budget, and facilitating meetings. Id. at 135. As a general rule, Daugherty employees do not provide ongoing support for a product after it is delivered to the client. Garofalo Aff. ¶ 10.

In addition to the consulting divisions, Daugherty operates the Mobile Solutions Group, where the named plaintiffs were employed. The Mobile Solutions Group focuses

solely on a software product called "Mobility," which is used primarily by Anheuser-Busch InBev for wholesalers of its product.[2]  The consulting divisions do not perform functions related to the Mobility product and do not have a Mobile Solutions Group. Garofalo Aff. ¶¶ 5-6, 9-10.

The Mobile Solutions Group has two subdivisions: the Development subdivision and the Support subdivision (also referred to as "outsourcing").  Affidavit of William E. Richards ¶ 7 [Doc. #64-3]; Organizational Chart [Doc. #64-8].  The two subdivisions have separate managers and different functions.  Employees in the Development subdivision work on improving the Mobility software and function much like employees in the software consulting divisions.  Richards. Aff. ¶ 16.  Employees in the Support subdivision provide support services to Anheuser-Busch InBev wholesalers using the Mobility software.  Id. ¶ 8.  The Support subdivision is further subdivided into several areas of responsibility.  Org. Chart.  Richards Aff. at ¶ 24.

Plaintiff Sutton-Price worked in the Support subdivision.  She was hired as a Technical Analyst and was then promoted to Senior Technical Analyst; since 2009, her position has been Product Specialist II.  In these positions, Sutton-Price has worked on the Tier 2 Helpdesk.  Richards Aff. ¶¶ 11-12, 23.  The Tier 2 Helpdesk employees receive calls placed by wholesalers.[3]  Id. at ¶ 21-22.  Her duties primarily consist of providing call center support to correct hardware and software problems; troubleshooting network connectivity issues; and installing, configuring, testing and

---

[2]William Richards, general manager of the Mobile Solutions Group, testified at deposition that Anheuser-Busch purchased Mobility from Daugherty for use by their wholesalers.

[3]The "Tier 1 Helpdesk" is operated by Anheuser-Busch InBev employees.  If they are unable to resolve a wholesaler's problem, they "escalate" it to the Tier 2 Helpdesk staffed by Mobile Solutions Group employees.  Richards Aff. ¶ 21.

troubleshooting computer applications, networks and hardware. Sutton-Price Interrogatory Answers ¶ 14 [Doc. #64-6].

Plaintiff Stahl worked in the Support subdivision as an Implementation Specialist[4] from April 2006 to October 2009. Her job duties included providing telephone support for clients and on-site training to wholesalers in implementing the Mobility application. Stahl Interrogatory Answers ¶ 14 [Doc. #64-9].

The plaintiffs identify seven other employees whom they assert perform similar job duties.

II. <u>Discussion</u>

Section 7 of the FLSA mandates that an employer may not subject non-exempt employees to a work week in excess of forty hours, unless the employee is compensated for overtime with additional pay of at least one and one-half times the employee's regular hourly wage. 29 U.S.C. § 207(a)(1). An action to recover overtime compensation and liquidated damages may be maintained, "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Similarly situated employees who wish to join the action must opt into the class. <u>Pacheco v. Boar's Head Provisions Co., Inc.</u>, 671 F. Supp. 2d 957, 959 (W.D. Mich. 2009) (<u>citing</u> <u>O'Brien v. Ed Donnelly Enterprises, Inc.</u>, 575 F.3d 567, 583 (6th Cir. 2009)). A district court has discretion to facilitate notice to potential plaintiffs. <u>Id.</u> (<u>citing</u> <u>Hoffmann-LaRoche, Inc. v. Sperling</u>, 493 U.S. 165, 169, 171 (1989)).

---

[4]The Technical Analyst and Implementation Specialist roles have been phased out and are now called "Product Specialist." Richards Aff. ¶ 14.

The FLSA does not define "similarly situated." Kayser v. Southwestern Bell Telephone Co., --- F. Supp. 2d ---, 2012 WL 6568467, at *6 (E.D. Mo. Dec. 17, 2012). Furthermore, "[t]he Eighth Circuit Court of Appeals has not decided the standard to determine whether potential opt-in plaintiffs are 'similarly situated' under § 216(b)." Greenwald v. Phillips Home Furnishings, Inc., 2009 WL 259744 at *1 (E.D.Mo. Feb. 3, 2009). District courts within the Eighth Circuit typically use a two-step approach to making the determination. See, e.g., Littlefield v. Dealer Warranty Services, LLC, 679 F. Supp. 2d 1014, 1016 (E.D. Mo. 2010). See also Kennedy v. Boulevard Bank, No. 4:12CV40 JCH, 2012 WL 3637766, at *2 (E.D. Mo. Aug. 22, 2012). Under this two-step process, plaintiffs first seek conditional certification. Dernovish v. AT&T Operations, Inc., 2010 WL 143692 at *1 (W.D. Mo. Jan. 12, 2010). If conditional certification is granted, potential class members receive notice and may "opt-in" to the action. Id.; Kautsch v. Premier Communications, 504 F. Supp. 2d 685, 688 (W.D. Mo. 2007) (citation omitted). At the second step of the process (typically after the close of discovery when the court has more information available to it), the defendant may move to decertify the class. The court then makes "a second determination, using a more rigorous standard, as to whether the lead plaintiffs and opt-in plaintiffs are similarly situated, and whether the class should be decertified." Pacheco, 671 F. Supp. 2d at 959-60.

The motion for conditional certification is usually filed at an early stage of the litigation and plaintiffs' burden is typically not onerous. Kayser, 2012 WL 6568467, at *7. Conditional certification at the notice stage requires "nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan." Davis v. NovaStar Mortg., Inc., 408 F. Supp. 2d 811,

815 (W.D. Mo. 2005). Plaintiffs may meet this "notice stage" burden by supplying detailed allegations supported by affidavits. Kennedy, 2012 WL 3637766, at *2 (internal quotation marks and citation omitted).

In this case, plaintiffs seek class certification after a period of discovery focused solely on identifying the putative class. Over the course of four-and-a-half months, defendant produced 16,000 pages of documents, plaintiffs deposed two corporate representatives, and the parties exchanged interrogatory responses. In cases where the plaintiffs have been afforded discovery on the issue of whether or not the action should proceed as a collective action, courts typically apply a more restrictive, but still lenient standard, requiring the plaintiffs to demonstrate at least "modest" factual support for the class allegations in their complaint. Pacheco, 671 F. Supp. 2d at 960; see also Kayser, 2012 WL 6568467, at *7 (noting varying approaches when some discovery has occurred and adopting an "intermediate" approach); McClean v. Health Systems, Inc., No. 11-03037-CV-S-DGK, 2011 WL 6153091, at * 4 (W.D. Mo. Dec. 12, 2011); (courts have acknowledged the unfairness of applying lenient standard where parties have engaged in substantial discovery); Creely v. HCR ManorCare, Inc., 789 F. Supp. 2d 819, 823-27 (N.D. Ohio 2011) (discussing alternative approaches to heightened standard).

Although plaintiffs oppose application of anything other than the most lenient standard, they rely on the evidence obtained during discovery to support their certification motion. Under this circumstance, the Court finds it appropriate to apply a somewhat heightened -- but still lenient -- approach. See Kayser, 2012 WL 6568467, at *7 (declining to ignore substantial evidence); McClean 2011 WL 6153091, at *4 (the court "cannot close its eyes to the amount of discovery already performed");

Olivo v. GMAC Mortg. Corp., 374 F. Supp. 2d 545, 548 n.1 (E.D. Mich. 2004) (requiring plaintiffs to demonstrate "modest" factual support for the class allegations rather than allow them to simply rely upon the allegations in the complaint). The standard applied in the Kayser, McClean, and Creely decisions is as follows:

> [I]n order to provide some measurable standard by which to judge if Plaintiffs have made a sufficient modest "plus" factual showing . . ., the Court will compare Plaintiffs' allegations set forth in their Complaint with the factual record assembled through discovery to determine whether Plaintiffs have made sufficient showing beyond their original allegations that would tend to make it more likely that a class of similarly situated employees exists.

Kayser, at * 7 (citations omitted).

In cases involving allegations of misclassification, a plaintiff must typically show that the employees performed similar duties, were classified as exempt, worked more than forty hours, and were not paid overtime. Halsey v. Casino One Corp., 4:12CV1602 CDP, 2012 WL 6200531, at *3 (E.D. Mo. Dec. 12, 2012). Plaintiffs assert they do not need to show that the putative class members have similar job duties because the defendant misclassified them as exempt from the FLSA under one exception, rather than multiple exceptions. They cite two cases as support for this argument: Romero v. H.B. Automotive Grp., Inc., No. 11CV386 (CM), 2012 WL 1514810 (S.D.N.Y. May 1, 2012), and Nerland v. Caribou Coffee Co., Inc., 564 F. Supp. 2d 1010, 1019 (D. Minn. 2007). Neither case stands for the proposition plaintiffs assert; indeed, both recognize the need to make at least some showing that the putative class members performed similar work. See Romero at *14 ("A collective action is only appropriate where the plaintiffs make some showing that the nature of the work performed by other claimants is at least similar to their own."); Nerland, 564 F. Supp. 2d at 1019 (noting that plaintiffs presented "competent generalized evidence

of the *uniform scope of duties and responsibilities* of all Caribou store managers") (emphasis added). Plaintiffs' contention that they need not show that they and the putative class have similar job duties is not supported by the law.

Plaintiffs assert that all employees holding the "consultant" job title perform basic IT troubleshooting, configuration and general consulting duties. However, it is not enough to show that the plaintiffs and potential opt-ins share computer-related responsibilities in a broad sense. Cunningham v. Elec. Data Sys. Corp., 754 F. Supp. 2d 638, 650 (S.D.N.Y. 2010). "'Installing, maintaining, and/or supporting computer hardware and/or software' could include both a low-level technician who checks whether computers are switched on and a programmer who writes software patches involving complex cryptographic code." Id.; see also Villareal v. St. Luke's Episcopal Hosp., 751 F. Supp. 2d 902, 919 (S.D. Tex. 2010) (rejecting plaintiff's contention that all IT employees had "a common purpose and function" to help computer users get the best performance from their systems). A generic statement of job functions that creates an overbroad category is not permitted under the similarly-situated analysis. Id. "While slight differences in job duties or functions do not run afoul of the similarly-situated requirement, significant variation of job duties among potential class members means that class certification should not be granted." Id. (citation omitted).

Daugherty employees outside the Mobile Solutions Group perform different functions than those within the group. They typically are assigned as part of a team to work on a software project to meet a specific client need. Team members are responsible for understanding the client's specific need, the existing data and software structures, and the different technologies that may be utilized to address the client's need. They have to be able to communicate clearly over extended periods of time with

the client and with one another. Solutions have to be rigorously tested to ensure that they function properly and address the client need. Employees in these divisions typically do not provide ongoing support once a project is completed.

By contrast, the Mobile Solutions Group employees support a single product on an on-going basis in a variety of settings. They do not design new solutions to specific client-designated problems and their work generally does not require them to analyze and utilize existing client technology and data systems. There are further significant distinctions across the two Mobile Solutions Group subdivisions. Employees in the Support subdivision do not write code or make modifications to the software. They travel to wholesaler sites to install the Mobility product and related hardware. They also train the wholesaler's employees on using the software and hardware. Plaintiffs have not identified any other Daugherty employees, outside the Support subdivision, whose work is substantially similar to that which they perform. See Villareal, 751 F. Supp. 2d at 919-20 (rejecting plaintiff's claim that IT employees in five different work groups were similarly situated).

Defendant suggests that it might be appropriate to certify a smaller class of employees who work or worked in the Mobile Solutions Group on the Tier 2 Helpdesk and Installation Team. Plaintiffs have not requested this alternative relief and thus the Court declines to address this proposal. Plaintiffs' motion for conditional certification and notice will be denied. Defendant's motion for oral argument on conditional certification will be denied as moot.

Defendant filed a motion for summary judgment in which it argued that the Application Architects are exempt from the FLSA under the Computer Employee, Administrative Employee, and Highly Compensated Individual exceptions. Plaintiffs

responded by filing a motion to dismiss or stay consideration of the summary judgment motion, arguing that it is premature because the parties have not engaged in substantive discovery. Because the Court will deny class certification, both motions are now moot.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiffs' motion to conditionally certify FLSA collective action, order disclosure of putative class members' contact information, and facilitate class notice [Doc. #54] is **denied**.

**IT IS FURTHER ORDERED** that defendant's motion for summary judgment as to its Application Architects [Doc. # 59] is **denied as moot**.

**IT IS FURTHER ORDERED** that defendant's motion for hearing [Doc. #67] is **denied as moot**.

**IT IS FURTHER ORDERED** that plaintiffs' motion to dismiss or, in the alternative, to stay defendant's motion for summary judgment [Doc. #68] is **denied as moot**.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 1st day of July, 2013.