IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| SHERRY SUTTON-PRICE, | ) | |
| JEANNA STAHL, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Cause No. 4:11-CV-01943-CEJ |
| | ) | |
| DAUGHERTY SYSTEMS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' RENEWED MOTION TO
CONDITIONALLY CERTIFY FLSA COLLECTIVE ACTION, ORDER DISCLOSURE
OF PUTATIVE CLASS MEMBERS' NAMES AND CONTACT INFORMATION, AND
FACILITATE CLASS NOTICE**

COME NOW Plaintiffs, by and through counsel, and for their Memorandum of Law in

Support of Plaintiffs' Renewed Motion to Conditionally Certify FLSA Collective Action, Order

Disclosure of Putative Class Members' Names and Contact Information, and Facilitate Class

Notice, state as follows:

## INTRODUCTION

On January 8, 2013, Plaintiffs filed their initial Motion to Conditionally Certify FLSA

Collective Action, Order Disclosure of Putative Class Members' Names and Contact

Information, and Facilitate Class Notice ("Motion").  [Doc. #54-55].  Plaintiffs moved for

conditional certification of a class of IT customer consultants employed throughout Defendant's

corporate structure.  [Doc. #54-55].

On July 1, 2013, this Court issued an Order ("Order") denying Plaintiffs' initial Motion.

[Doc. #76] based upon the proposed class presented by Plaintiffs.  This Court held that while a

putative class of employees who worked in the Mobile Solutions Group ("Mobile Solutions") on

1

the Tier 2 Helpdesk and/or Installation Team may be similarly situated, Plaintiffs did not request this alternative relief, and the Court declined to address this proposal in the Order.  [Doc. #76, p. 10].  The Court noted that while distinctions may exist between the Support and Development subdivisions of Mobile Solutions, Mobile Solutions employees are similar in that they support a single product on an on-going basis, do not design new solutions to specific client-designated problems, and do not analyze and utilize existing client technology and data systems.  [Doc. #76, p. 10].

## PROPOSED PUTATIVE CLASS

In accordance with 29 U.S.C. § 216(b), Plaintiffs request permission to send notice to a class comprised of **Mobile Solutions Employees** who performed duties within any of the following job roles/titles in within the past three (3) years: Product Specialist, Technical Analyst, Senior Technical Analyst, Implementation Specialist, Data Analyst, Business Analyst, Software Engineer, and Quality Analyst.

The proposed putative class also encompasses individuals who worked within the Support subdivision of Mobile Solutions within the past three (3) years on the Tier 2 Helpdesk or Installation Team in the Support subdivision of Mobile Solutions in the job roles of Product Specialist, Technical Analyst, Senior Technical Analyst, and/or Implementation Specialist. [Doc. #76].

## STATEMENT OF FACTS

**A.      Defendant's Mobile Solutions Group**

Defendant provides software consulting and support services for IT departments at numerous Fortune 500 and Fortune 100 companies. (Exhibit 1, Garofalo Dep., 12:15-25). Defendant's corporate headquarters is located in St. Louis, Missouri. (Exhibit 1, 14:2-4; Exhibit 2, Richards Dep., 10:1-3).

The Mobile Solutions Group includes a subset of employees within the St. Louis office who provide IT customer support duties specifically for Defendant's Mobility software ("Mobility"), which is utilized by Anheuser-Busch wholesalers. (Ex. 1, 12:20-21). Mobile Solutions comprises its own separate group within Defendants' broader corporate structure. (Ex. 3-Mobile Solutions Chart). Mobile Solutions employees provide support services for Mobility on an on-going basis. (Ex. 4, Price Decl., ¶ 3; Ex. 5, Stahl Decl., ¶ 3). Defendant houses Mobile Solutions on its own floor at the St. Louis location. (Ex. 1, 25: 10-15).

**B.      The Similarly Situated Nature Of Plaintiffs And Putative Class Members**

Plaintiffs are similarly situated to the putative class of Defendant's employees who work within Mobile Solutions and provide IT support services, including but not limited to basic IT troubleshooting, support, and software configuration duties in accordance with the strict policies, procedures, and guidelines governing Mobility. (Price Decl. ¶ 4; Stahl Decl. ¶ 4).

**1.      Plaintiff Price**

Since 2006, Defendant has employed Price to work in the capacities of Technical Analyst, Senior Technical Analyst, and Product Specialist at the Tier 2 Helpdesk in Mobile Solutions. (Price Decl., ¶ 2). At the Tier 2 Helpdesk, Plaintiff Price provides IT support by

telephone to Anheuser-Busch wholesalers and Defendant's Implementation Specialists working with Defendant's Mobility software.  (Price Decl., ¶ 4).  Throughout Price's employment with Defendant, her job duties have primarily included, but not been limited to, using pre-configured software tools to correct hardware and software problems associated with Mobility; troubleshooting network connectivity issues; and installing, configuring, testing, and troubleshooting computer applications, networks, and hardware associated with Mobility.  (Price Decl., ¶ 4, 10).  Plaintiff alleges employees at the Tier 2 Helpdesk perform duties similar to other employees in Mobile Solutions, including but not limited to Implementation Specialists and Product Specialists.  (Price Decl., ¶ 5, 10).

### 2.    Plaintiff Stahl

Plaintiff Stahl provided on-site IT support services for A-B wholesalers using Mobility as an Implementation Specialist with Mobile Solutions.  (Stahl Decl., ¶ 3).  The Installation Team installs Mobility and trains customers on the use of Mobility at client sites.  (Exhibit 2, 29: 1-3; Stahl Decl., ¶ 4).  Plaintiff Stahl provided IT support for clients using pre-configured software testing and troubleshooting tools to correct and troubleshoot hardware and software problems associated with Mobility; trained Anheuser-Busch wholesalers for the implementation of the Mobility application provided by Defendant; helped set up the training schedule for the wholesaler; and went on-site to provide support services and training to the wholesaler in accordance with the strict policies and procedures governing use of Defendant's Mobility software.  (Stahl Decl., ¶ 4).  Plaintiff Stahl performed duties similar to other employees providing IT support duties in Mobile Solutions, including but not limited to Product Specialists and Business Analysts.  (Stahl Decl., ¶ 14).

4

### 3.    Similarly Situated Employees Within Mobile Solutions

The following job roles within Mobile Solutions perform configuration, installation, testing, and troubleshooting duties associated with Mobility using pre-established templates and/or software tools: Product Specialist, Technical Analyst, Senior Technical Analyst, Implementation Specialist, Data Analyst, Business Analyst, Software Engineer, and Quality Analyst (Exhibit 2, 58: 21-23; 59: 21-22; Stahl Decl., ¶ 14).

Plaintiffs allege employees throughout Mobile Solutions performed IT support duties similar to those performed by Plaintiffs.  For instance, Plaintiff Stahl alleged she performed IT support duties for Defendant's Mobility software similar to other roles, including but not limited to Business Analysts, Product Specialists, and Software Engineers.  (*Compare* Stahl Decl., ¶ 14 *with* Exhibit 6).

Corporate representative William Richards ("Richards") testified that Data Analysts, Business Analysts, Quality Analysts, and Software Engineers in Mobile Solutions perform basic IT support, testing, troubleshooting, and configuration in accordance with the strict guidelines and procedures governing Mobility software.  (*See, e.g.,* Exhibit 2, 58: 21-23; 59: 21-22).  Richards testified that Data Analysts from the Development subdivision of Mobile Solutions work with installation teams from the Support subdivision configuring, setting up, and installing Mobility software at A-B wholesalers.  (Exhibit 2, 61: 1-3).  Richards claimed that Defendant entrusts the Data Analyst with partial responsibility for troubleshooting and configuring Mobility.  (*See* Exhibit 2, 52: 17-23; 53: 1-5).  Richards further testified that Data Analysts perform testing on Mobility by reviewing incoming data and troubleshooting the software. (Exhibit 2, 59: 21-24; 61: 7-11).

5

Richards further stated that Business Analysts in Mobile Solutions perform troubleshooting and testing duties for Mobility.  (Exhibit 2, 58: 16-17).  Richards testified that Business Analysts in Mobile Solutions perform manual and automatic testing for Mobility "quite often" using structured testing plans.  (Exhibit 2, 58: 16-17).  Richards asserted that neither Business Analysts nor Data Analysts typically change source code, though they may troubleshoot Mobility.  (Exhibit 2, 61: 7-11).

Richards testified that similar to Data Analysts, Mobile Solutions Quality Analysts perform basic IT support duties in the context of configuring and testing Mobility.  The duties of Quality Analysts focus on testing the Mobility software.  (Exhibit 2, 73: 25; 74: 1-3).  Richards admitted that Quality Analysts frequently use tools or templates to create tests used by Data Analysts to troubleshoot and test the functionality of Mobility software.  (Exhibit 2, 75: 7-16).

Richards testified that Mobile Solutions Software Engineers perform routine troubleshooting and maintenance on Mobility.  (Ex. 2, 63: 15-18).  Richards admitted that Mobile Solutions Software Engineers use pre-programmed "tools" to maintain Mobility, and modify existing source code in the program.  (Ex. 2, 64: 15; 65: 1-2).

Similar to Product Specialists and Implementation Specialists, Data Analysts, Business Analysts, Software Engineers, and Quality Analysts perform configuration, installation, testing, and troubleshooting duties associated with Mobility using pre-established templates and/or software tools.  (Exhibit 2, 58: 21-23; 59: 21-22; Stahl Decl., ¶ 14).

**C.      Defendant's Uniform Classification Of Mobile Solutions Employees As Exempt**

Plaintiffs and putative class members were all subject to a uniform policy in which they were classified as exempt employees under the FLSA, and therefore not compensated at a rate of one-and-one-half times their regular rate of pay for hours worked in excess of forty (40) per workweek.  (Price Decl., ¶ 11-13; Stahl Decl., ¶ 12-14).

Plaintiffs allege Defendant classified them and other similarly situated Mobile Solutions employees as exempt for purposes of overtime compensation for hours worked in excess of forty (40) per workweek. (Price Decl., ¶ 12, 17; Stahl Decl., ¶ 14).  Corporate representative Richards admitted Defendant classified all employees within Mobile Solutions during the statutory period as "exempt" employees.  (Exhibit 2, 95: 17-22).  Richards testified that Defendant classifies all Mobile Solutions employees as exempt from the overtime provisions of the FLSA, without regard to potential differences between individual job roles.  (Exhibit 2, 95: 17-22).  Plaintiffs witnessed others who primarily performed IT support duties in Mobile Solutions classified as exempt employees.  (Price Decl., ¶ 12; Stahl Decl., ¶ 14).

However, Plaintiffs and putative class members performed non-exempt duties including, but not limited to, providing IT support, networking configuration, testing, installing, and troubleshooting services for A-B wholesalers utilizing Mobility software.[1]  (Price Decl., ¶ 4;

---

[1]  According to a 2006 DOL Opinion, IT Support Specialists whose primary duties consisted of installing, configuring, testing, and troubleshooting computer applications, networks, and hardware were found to be non-exempt employees.  (Exhibit 11, DOL FLSA2006-42, at 4).  Similarly, employees within Mobile Solutions primarily performing general troubleshooting and configuration duties are clearly non-exempt employees despite Defendant's attempt to attach an exempt status to these employees.  (*See* Price Decl., ¶4; Stahl Decl., ¶ 4).

7

Stahl Decl., ¶ 4).  Plaintiffs observed putative class members performing similar non-exempt IT support duties within Mobile Solutions.  (Price Decl., ¶ 5, 10; Stahl Decl., ¶ 14).

Furthermore, Plaintiffs and putative class members neither served in supervisory roles nor performed supervisory duties.  (Exhibit 1, 92:16-18; Price Decl., ¶ 23-25; Stahl Decl., ¶ 5). Plaintiffs and putative class members do not have the ability to hire employees, fire employees, discipline employees, promote employees, or set employees' schedules.  (Exhibit 1, 92:2-25; Price Decl., ¶ 23; Stahl Decl., ¶ 5).  Within Mobile Solutions, Richards testified that he possessed ultimate responsibility for hiring and firing, and final approval regarding budgetary concerns.  (Exhibit 2, 44:20-25, 45:1-5).  Richards received input from Manager Jamie Fallard and Development Manager Julie Moore regarding personnel and budgetary decisions, but still retained ultimate responsibility.  (Exhibit 2, 44:20-25, 45:1-5).

**D.     Defendant's Uniform Policy Denying Putative Class Members Overtime Compensation At A Rate of Time-And-A-Half**

Defendant adhered to a uniform policy compensating Plaintiffs and putative class members at the employee's regular hourly rate of pay for hours worked in excess of forty (40) hours per workweek.  (Price Decl., ¶ 15; Stahl Decl., ¶ 13).

Plaintiffs allege that they and putative class members routinely worked well in excess of forty (40) hours per workweek for Defendant while performing duties during non-business hours. (Price Decl., ¶ 6; Stahl Decl., ¶ 10-11).  However, no Mobile Solutions employees received overtime compensation at a rate of one-and-one-half times their regular rate of pay for hours worked in excess of forty (40) per workweek.  (*See, e.g.,* Exhibit 2, 95:17–22, 101:1-13; Price Decl., ¶ 12, 15; Stahl Decl., ¶ 13-14).

8

Defendant's Support Department policies state that "**[o]vertime** hours will be paid at the employee's **current flat hourly rate**." (Exhibit 7) (emphasis added). Plaintiffs allege Defendant applied this uniform policy in practice, as they received their flat regular hourly rate of pay for hours worked in excess of forty (40) per workweek. (Price Decl., ¶ 15; Stahl Decl., ¶ 13).

Richards admitted Mobile Solutions employees worked in excess of forty (40) hours per workweek. (Exhibit 2, 97: 14-16, 100: 18-20). However, Richards testified that no Mobile Solutions employees earned overtime at a premium rate of time-and-a-half. (Exhibit 2, 97: 14-16, 100: 18-20). Richards classified payment for hours worked in excess of forty (40) per workweek as an "incentive bonus," but admitted that Mobile Solutions employees received their regular flat hourly rate for hours worked in excess of forty (40) per workweek. (Exhibit 2, 100: 18-25, 101: 17-25, 102: 1).

## QUESTION PRESENTED

Whether Plaintiffs' FLSA claim for unpaid overtime wages should be preliminary certified as a collective action under 29 U.S.C. § 216(b) and notice sent informing potential plaintiffs of their right to opt-in to this case.

## ARGUMENT

### A.    Applicable FLSA Provisions And Law

The FLSA requires that employers pay non-exempt employees a regular hourly rate for up to forty (40) hours per week and overtime compensation at a rate of at least one-and-one-half times their regular rate of pay for hours worked in excess of the forty (40) hour workweek. 29 U.S.C. §§ 206, 207(a)(1).

Section 216(b) of the FLSA provides a private right of action to recover damages.  29 U.S.C. § 216(b).  Such actions may be maintained by any one or more employees for and on behalf of himself and other employees "similarly situated." *Chankin v. Tihen Commun's*., No. 4:08-CV-196-HEA, 2009 WL 775588, at *1 (E.D. Mo. March 20, 2009); *Huang v. Gateway Hotel Holdings*, 248 F.R.D. 225, 227 (E.D. Mo. 2008) (Exhibit 10).

When deciding whether to conditionally certify a collective class of "similarly situated" individuals, the "first stage of certification requires nothing more than substantial allegations that putative class members were together the victims of a single decision, policy or plan." *Holiday v. JS Express, Inc.,* No. 4:12-cv-01732, *12 (E.D. Mo. May 30, 2013) (attached as Exhibit 12).  A defendant cannot defeat conditional certification simply by arguing that the duties of the named Plaintiffs vary significantly from other putative plaintiffs.  *Id.*  A class can be conditionally certified on the basis of the "general nature" in the job duties of class members.  *Id.*

In the Court's July 1, 2013 Order, it indicated a "more restrictive, but still lenient standard," is appropriate due to the amount of discovery conducted for the purposes of conditional certification.  [Doc. #76, p. 7].  *See, e.g., McClean v. Health Systems, Inc.,* No. 11-03037-CV-S-DGK, 2011 WL 6153091, at *4 (W.D. Mo. Dec. 12, 2011).  Under this standard, the Court compared "Plaintiffs' allegations set forth in the Complaint with the factual record assembled in discovery to determine whether Plaintiffs have made sufficient showing beyond their original allegations that would tend to make it more likely that a class of similarly situated employees exists."  [Doc. #76, p. 8].  *Kayser v. Southwestern Bell Telephone Co.,* 2012 WL 6568467 (E.D. Mo. Dec. 17, 2012). "In cases involving allegations of misclassification, a plaintiff must typically show that the employees performed similar duties, were classified as

10

exempt, worked more than forty hours, and were not paid overtime." [Doc.#76, p. 8]. *Halsey v. Casino One Corp.,* No. 4:12-CV-1602, 2012 WL 6200531, at *3 (E.D. Mo. Dec. 12, 2012).

**C.   Plaintiffs Provide Substantive Detailed Allegations Concerning The Similarly Situated Nature Of The Putative Class**

Plaintiffs' declarations and the testimony provided by Defendant's corporate representatives demonstrate the existence of a similarly situated putative class on the basis of the following four characteristics analyzed by this Court in misclassification cases: 1) similar specific job duties; 2) uniform exempt classification; 3) working in excess of forty (40) hours per workweek; and 4) uniform denial of time-and-a-half compensation for hours in excess of forty (40) hours per workweek. (*E.g.,* Ex. 2, 95: 4-6, 17-19; Price Decl., ¶ 4-6, 9-12; Stahl Decl., ¶ 4, 10, 13-14).

Plaintiffs and putative class members employed in Mobile Solutions in the roles of Product Specialist, Technical Analyst, Senior Technical Analyst, Implementation Specialist, Data Analyst, Business Analyst, Software Engineer, and Quality Analyst during the class period are similarly situated on the basis of their similar job duties.  Plaintiffs and putative class members performed one or more of the following similar IT support duties specific to Mobility within the Mobile Solutions unit:

- Utilizing pre-configured software tools to correct hardware and software problems associated with Mobility; (*E.g.,* Exhibit 2, 58: 16-17, 21-23; 59: 21-22; 61: 1-3; Price Decl., ¶ 4; Stahl Decl., ¶ 4);

- Providing troubleshooting for network and connectivity issues associated with Mobility;  (*E.g.,* Exhibit 2, 52: 17-23; 53: 1-5; Price Decl., ¶ 4; Stahl Decl., ¶ 4);

- Providing instructions regarding the installation of Mobility; (*E.g.,* Exhibit 2, 52: 17-23; Price Decl., ¶ 4; Stahl Decl., ¶ 4);

11

- Providing instructions regarding the configuration of Mobility;  (Exhibit 2, 60: 22-25; 61: 1-3; Price Decl., ¶ 4; Stahl Decl., ¶ 4);

- Testing the functionality of Mobility for purposes of installation, troubleshooting, and configuration.  (Exhibit 2, 58: 16-17; 58: 19-23; 59: 21-24; Price Decl., ¶ 4; Stahl Decl., ¶ 4).

Plaintiffs and putative class members did not have the ability to hire employees, fire employees, discipline employees, promote employees, or set employee schedules.  (Price Decl., ¶ 23; Stahl Decl., ¶ 5).  Plaintiffs and putative class members lacked the ability to make personnel or budgetary recommendations within Mobile Solutions.  (*See* Exhibit 2, 44: 20-25; 45: 1-5).

Further, Defendant similarly classified Plaintiffs and putative class members as exempt employees.  (Exhibit 2, 95: 17-22; Price Decl., ¶ 11-12; Stahl Decl., ¶ 12-13).  Corporate representative Richards admitted all employees within Mobile Solutions during the statutory period were classified as "exempt."  (Exhibit 2, 95: 17-22).

Plaintiffs and putative class members routinely worked in excess of forty (40) hours per workweek.  (Price Decl., ¶ 6; Stahl Decl., ¶ 10-11).  Plaintiffs both alleged that they observed other employees within Mobile Solutions work in excess of forty (40) hours per workweek.  (Price Decl., ¶ 21; Stahl Decl., ¶ 14).  Richards admitted Mobile Solutions employees performing IT support duties worked in excess of forty (40) hours per workweek.  (Exhibit 2, 97: 14-16; 100: 18-20).

Plaintiffs and putative class members were not compensated for hours worked in excess of forty (40) per workweek at a rate of one-and-one-half times their regular rate of pay.  (Exhibit 2, 97: 14-16; 100: 18-20; Price Decl., ¶ 13; Stahl Decl., ¶ 13).  Plaintiffs allege Defendant paid

them and other Mobile Solutions employees at their flat regular hourly rate of pay for hours worked in excess of forty (40) per workweek.  (Price Decl., ¶ 13-14; Stahl Decl., ¶ 14).

Plaintiffs and putative class members remain similarly situated on the basis of the following four characteristics analyzed by this Court in the misclassification context: 1) similar specific job duties; 2) uniform exempt classification; 3) working in excess of forty (40) hours per workweek; and 4) not being properly compensated overtime.

### D. Plaintiffs Proposed Putative Class Encompasses All Tier 2 Helpdesk And Installation Team Personnel

Plaintiffs' proposed putative class within Mobile Solutions includes those employees who perform Tier 2 Helpdesk duties and/or work on the Installation Teams.

Tier 2 Helpdesk and Installation Team employees are similarly situated in accordance with the four factors analyzed by this Court in the misclassification context:

- Both Tier 2 Helpdesk and Installation Team employees performed similar IT support duties using pre-configured software tools to correct, troubleshoot, and test hardware and software problems associated with Defendant's Mobility software for A-B wholesalers; (Price Decl., ¶ 4; Stahl Decl., ¶4);

- Defendant similarly classified Tier 2 Helpdesk and Installation Team employees as exempt from overtime compensation under the FLSA; (Exhibit 2, 95: 17-22; Price Decl., ¶ 11-12; Stahl Decl., ¶ 13-14);

- Both Tier 2 Helpdesk and Installation Team employees routinely worked in excess of forty (40) hours per workweek; (Price Decl., ¶ 5-6; Stahl Decl., ¶ 13-14); and

- Defendant compensated Tier 2 Helpdesk and Installation Team employees for hours in excess of forty (40) hours per workweek at their regular hourly rate of pay; (Price Decl., ¶ 15, 21; Stahl Decl., ¶ 13-14).

Employees working at the Tier 2 Helpdesk and for the Installation Team are similarly situated on the basis of their: 1) similar specific job duties; 2) uniform exempt classification; 3) routine work in excess of forty (40) hours per workweek; and 4) failure to be compensated overtime at a rate of one-and-one-half times their regular rate of pay.

### E.    Consent Forms & Disclosures

Trial courts have the authority to facilitate notice to potential plaintiffs to inform them of an action and allow them an opportunity to "opt-in."  *Hoffman-La Roche v. Sperling*, 493 U.S. 165, 170–71 (1989).  Plaintiffs have discretion to prepare the notices as they see fit so long as the information is fair and accurate.  *Littlefield v. Dealer Warranty Services, LLC*, 679 F.Supp.2d 1014, 1018 (E.D. Mo. 2010). No alteration to the notices should be made by the Court unless absolutely necessary. *See King v. ITT Continental Baking Co.*, No. 84 C 3410, 1986 U.S. Dist. WL 2628, at *3 (N.D. Ill. Feb. 18, 1986).

Plaintiffs request this Court authorize that the consent form attached as Exhibit 8 be sent to all similarly situated putative class members who have worked for Defendant within the last three (3) years.  Plaintiffs further request the notice attached as Exhibit 9 be sent with the consent form.  The attached notice and consent form are modeled closely after the notice and consent form approved by Judge Webber in *Huang*.  (Exhibit 10).

In furtherance of the notice, Plaintiffs request that this Court order Defendant to produce the full names, addresses, phone numbers, and email addresses of the class in a readable electronic format to facilitate notice to potential plaintiffs of this pending lawsuit. Plaintiffs request permission from this Court to disseminate the notice and consent form to putative class members at their last-known mailing address and email address.  Email notice is a viable and

14

helpful form of notifying putative class members of a pending action.  *See, e.g., Nobles v. State Farm Mut. Auto. Ins. Co.*, No. 2:10-CV-04175-NKL, 2011 WL 5563444 (W.D. Mo. Nov. 15, 2011); *Simmons v. Enterprise Holdings*, 4:10-CV-00625-AGF, 2011 WL 855669 (E.D. Mo. Mar. 9, 2011).

Plaintiffs further request including a postage-prepaid envelope in the Notice sent to prospective class members.  Numerous courts hold that enclosing a prepaid return envelope with the notice to potential class members facilitates a plaintiff's ability to join the class.  *See*, e.g., *Putnam v. Galaxy 1 Mktg., Inc.*, No. 3:10-CV-00072-JAJ-RAW, 2011 WL 4072388, at *15 (S.D. Iowa Aug. 23, 2011); *Black v. Settlepou, P.C.*, No. 3:10-CV-1418-K, 2011 WL 609884, at *5 (N.D. Tex. Feb. 14, 2011).

## CONCLUSION

WHEREFORE Plaintiffs respectfully request that the Court grant Plaintiffs' Motion to Conditionally Certify this FLSA Collective Action, Order Disclosure of Putative Class Members' Names and Contact Information, and to Facilitate Class Notice; order that Plaintiffs' collective action is conditionally certified pursuant to the FLSA, 29 U.S.C. § 216(b); and grant such further relief as this Court deems proper.

Respectfully Submitted,

By:      _____/s/ Kevin J. Dolley_____
         Kevin J. Dolley, USDC #54132MO
         Mark J. Obermeyer, USDC #63140MO
         LAW OFFICES OF KEVIN J. DOLLEY, LLC
         34 N. Brentwood Blvd., Suite 207
         St. Louis MO 63105
         (314)645-4100 (office)
         (314)647-4300 (fax)
         kevin@dolleylaw.com
         mark.obermeyer@dolleylaw.com
         mark.koupaljr@dolleylaw.com

         *Attorneys for Plaintiffs and those similarly situated*

## CERTIFICATE OF SERVICE

The undersigned certifies the service of the foregoing document on all counsel of record effectuated through the Court's electronic filing system on September 17, 2013.

         _____/s/ Kevin J. Dolley_____

16